1  JEFFREY LEE COSTELL(ST. BAR #93688)
   ALEXANDRE IAN CORNELIUS (ST. BAR #180652)
2  SEAN M. CRONIN (ST. BAR #174933)
   **COSTELL & CORNELIUS LAW CORPORATION**
3  1299 Ocean Avenue, Suite 400
   Santa Monica, California 90401-1007
4  Telephone: (310) 458-5959
   Facsimile: (310) 458-7959
5
   Attorneys for Plaintiffs Palmer/Sixth Street
6  Properties, L.P., a California Limited Partnership,
   and Geoffrey Palmer
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 PALMER/SIXTH   STREET )     CASE NO. CV 07-01346CAS(FMOx)
   PROPERTIES, L.P., a California )
12 limited partnership; and GEOFFREY )  Honorable Christina A. Snyder
   PALMER, an individual, )            Courtroom 5
13                          )
14        Plaintiffs )               **FIRST AMENDED COMPLAINT
                          )          FOR DAMAGES AND
15 vs.                     )          DECLARATORY AND
                          )          INJUNCTIVE RELIEF**
16                          )
   CITY  OF  LOS  ANGELES,  a )      1.   **INVERSE
17 California Municipal Corporation )      CONDEMNATION/
                          )             TAKING (U.S. CONST. 5TH
18        Defendant )                    AMEND.)**
                          )          2.   **VIOLATION OF EQUAL
19                          )             PROTECTION (U.S.
                          )             CONST. 14TH AMEND.)**
20                          )          3.   **VIOLATION OF DUE
                          )             PROCESS (U.S. CONST.
21                          )             14TH AMEND.)**
                          )          4.   **VIOLATION OF CIVIL
22                          )             RIGHTS UNDER 42 U.S.C.
                          )             §1983**
23                          )          5.   **INVERSE
                          )             CONDEMNATION/
24                          )             TAKING (CAL. CONST.,
                          )             ART. I §19)**
25                          )          6.   **VIOLATION OF EQUAL
                          )             PROTECTION (CAL.
26                          )             CONST., ART. I § 7)**
                          )          7.   **VIOLATION OF DUE
27                          )             PROCESS (CAL. CONST.,
                          )             ART. I §§ 7, 15)**
28 _____ )            8.   **BREACH OF CONTRACT**
                          )          9.   **BREACH OF COVENANT
                          )             OF GOOD FAITH AND
                          )             FAIR DEALING**

COPY
FILED
2010 JAN -4  PM 1:38
CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT CALIF.
LOS ANGELES
BY

Plaintiffs Palmer/Sixth Street Properties, L.P. (hereinafter "Plaintiff") and Geoffrey Palmer (hereinafter "Palmer") hereby allege and aver as follows:

## GENERAL ALLEGATIONS
## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Palmer/Sixth Street Properties, L.P., a California limited partnership, is a property owner in the City of Los Angeles and brings this complaint for damages based on state and federal constitutional claims relating thereto.

2. At all times relevant herein, including, but not limited to, during any administrative proceedings mentioned herein, Plaintiff Geoffrey Palmer, individually and dba GH Palmer Associates ("Palmer"), acted as the general manager and authorized agent for, and acted on behalf of and represented the interests of, Plaintiff.

3. Defendant the City of Los Angeles (the "City"), is a California municipal corporation. The City has taken the actions alleged herein through, among other agencies and governing bodies, the Los Angeles City Council ("Council") and various local agencies, including, but not limited to, the City of Los Angeles Central Area Planning Commission ("Planning Commission"), the City of Los Angeles Planning Department ("Planning Department"), the Director of the City of Los Angeles Planning Department ("Planning Director") and the Planning and Land Use Management Committee ("PLUM Committee").

4. Venue lies in this district pursuant to 28 *U.S.C.* §1391(b)(1) and because the Defendant resides in this District and the events giving rise to Plaintiff's and Palmer's claims occurred in this District.   This action is based on, and seeks to redress, among other things, violations of Plaintiff's rights to equal protection under the law and due process guaranteed by the United States Constitution, under the 5th and 14th Amendments as well as a violation of Plaintiff's and Palmer's civil rights under 42 *U.S.C.* §1983.   Accordingly, this Court has

1    jurisdiction over this action pursuant to 28 *U.S.C.* §1331, in that this action

2    arises under the Constitution and laws of the United States. In addition, this

3    Court has pendent and/or ancillary jurisdiction over the claims for relief alleged

4    herein under the Constitution of and under the laws of the State of California.

5    All federal constitutional provisions alleged herein are applicable to and in the

6    State of California and the City of Los Angeles through the 14th Amendment of

7    the Constitution of the United States.

8                      **PROCEDURAL HISTORY**

9   5.    On or about February 28, 2007, Plaintiffs filed this action. This action was

10     stayed until recently, under the *Pullman* abstention doctrine, until a prior state

11     court proceeding, Los Angeles Superior Court Case No. BS107637 (the "Prior

12     State Court Proceeding"), described in more detail below, was completed. In

13     addition, in order to preserve their rights under state law, Plaintiffs have filed an

14     additional complaint in state court, Case No. BC427941, containing, in essence,

15     the same Federal and State Constitutional and pendent/ancillary state claims

16     alleged herein (the "Current State Action"). However, Plaintiffs currently intend

17     to proceed with this federal action.

18  6.    The complaint in the Prior State Court Proceeding originally contained, in

19     essence, the same federal and state constitutional claims presented herein, which

20     were combined with a petition for writ of mandamus. As is customary, the

21     Superior Court bifurcated the mandamus proceeding from the complaint

22     containing the constitutional claims and tried the mandamus petition first.

23  7.    At the conclusion of the mandamus trial in the Prior State Court Proceeding, the

24     City filed pleadings and made arguments taking the position that, under the one

25     judgment rule, judgment could not be entered and a writ of mandamus could not

26     be issued against it unless and until the pending constitutional claims were

27     either voluntarily dismissed or adjudicated.

28

8.    Because Plaintiffs needed to obtain the relief that would be afforded by the entry of judgment and by the issuance of a writ of mandamus in a timely manner, Plaintiffs filed a voluntary dismissal, without prejudice, of the complaint in the Prior State Court Proceeding containing their constitutional claims.

9.    After the conclusion of the trial in the Prior State Court Proceeding, on or about December 14, 2007, the Superior Court, per the Honorable Judge Dzintra Janavs (retired), issued a decision against the City and in favor of Plaintiffs holding, in essence, that the City had violated Plaintiffs' rights under state law, as described in more detail below. (A true and correct copy of the Statement of Decision entered by the Superior Court is attached hereto as Exhibit "A.") The Statement of Decision held, in essence and among other things, that the mandatory affordable housing rental restrictions imposed by the City on the Piero II were in direct conflict with the Costa-Hawkins Act and thus are preempted by it.

10.   On or about February 13, 2008, Judge Janavs entered judgment and issued a writ of mandamus against the City in the Prior State Court Proceeding. (A true and correct copy of the judgment in the Prior State Court Proceeding is attached hereto as Exhibit "B" and a true and correct copy of the peremptory writ of mandate filed in the Prior State Court Proceeding is attached hereto as Exhibit "C.") The peremptory writ of mandate enjoined the City from applying or enforcing Section 11 of the Central City West Specific Plan, Ordinance 167,944, as amended (the "Affordable Housing Provisions") with respect to the Piero II project of Palmer that is the subject of the Trial Court Decision.   The aforementioned Statement of Decision and judgment and writ of mandate are sometimes collectively referred to as the "Trial Court Decision" herein.

11.   Subsequently, by a Notice of Appeal dated on or about February 26, 2008, the City appealed the judgment in the Prior State Court Proceeding to the Second District Court of Appeal.

12. On or about March 31, 2008, the City and Plaintiffs executed a Covenant and Agreement that was subsequently recorded in the Los Angeles County Recorder's Office on or about April 4, 2008 (the "Contract" or the "Covenant and Agreement"). The Covenant and Agreement obligated the City, among other things, to recommence and continue in good faith the processing of all applications for building and other permits and clearances for the Piero II project including shoring and excavation permits and foundation only permits, and further obligated the City to process and treat Plaintiffs' applications and requests for approval and permits in the same manner that is at least as favorable and not more onerous than the manner in which other similar projects in the City are processed and treated. (A true and correct copy of the Covenant and Agreement along with the Los Angeles County Recorder's Office cover page is attached hereto as Exhibit "D.")

13. In a unanimous decision and opinion issued or about July 22, 2009 (the "Court of Appeal Decision"), the Court of Appeal affirmed the judgment in the Prior State Court Proceeding, holding, among other things, that Section 11.C's requirements, as applied to Palmer's Piero II project in Condition 10, conflicts with and is preempted by Costa Hawkins. (A true and correct copy of the Court of Appeal Decision is attached hereto as Exhibit "E.")

14. Thereafter, the City filed a Petition for Review of the Court of Appeal Decision with the California Supreme Court, which was denied. (A true and correct copy of the California Supreme Court's denial of the Petition for Review is attached hereto as Exhibit "F.") By virtue of the foregoing, the Court of Appeal Decision is final and non-appealable.

15. The City also filed a request with the California Supreme Court that the Court of Appeal Decision be depublished. This request was summarily denied.

16. In connection with the recent lifting of the stay of this federal action, due to the conclusion of the Prior State Court Proceeding, the City took the position, on the

1    record, that this federal action cannot move forward unless and until Plaintiffs

2    have first adjudicated their constitutional claims in state court and that the City

3    will move to stay and/or dismiss this federal action. Plaintiffs disagree with this

4    position but, to avoid any prejudice that might result if this federal action were

5    dismissed and the Plaintiffs did not have a complaint on file that tolled any

6    applicable statutes of limitation with regard to Plaintiffs' constitutional claims,

7    out of caution, Plaintiffs filed a complaint in the Current State Action.

8    Depending on whether, when and how the Court in this federal action allows the

9    case to proceed here, Plaintiffs may seek to stay the Current State Action

10    pending adjudication of and proceedings in this federal action and hereby

11    reserves the right to do so.

12         **OTHER FACTS COMMON TO ALL CLAIMS FOR RELIEF**

13  17.   Plaintiff's general partner, Mr. Geoffrey Palmer, has emerged from relatively

14      modest beginnings to become one of the Los Angeles County's premier

15      residential developers. Over the past 15 years, Mr. Palmer has been responsible

16      for creating over a thousand market-rate and affordable housing units in Los

17      Angeles. Mr. Palmer's partnerships provide Los Angeles with desperately

18      needed rental housing. Currently, Mr. Palmer is leading efforts to develop the

19      woefully neglected, downtown Central City West ("CCW") area. One of Mr.

20      Palmer's partnerships recently completed construction of 632 residential units

21      in the innovative Medici development, the first privately developed and

22      unsubsidized market-rate apartment development built in the CCW area in over

23      30 years (the "Medici").

24  18.   In furtherance of these beneficial development efforts, on or about January 6,

25      2004, Plaintiff acquired the real property located at 609 St. Paul Avenue in the

26      City of Los Angeles (the "Property"), on which it intends to build the Piero II

27      project (the "Piero II") which previously was known as the Lorenzo project, a

28      mixed-use residential (350 units) and commercial (9,705 square feet)

development similar in style and theme to the Medici. Like the Medici, the units in the Piero II project will be <u>rental units</u>, not units offered for sale like the rest of the developments in the CCW area. Until recently, the Property was an eyesore devoid of any aesthetic appeal or benefit to the community, consisting mainly of a large parking lot. Before Mr. Palmer identified the Property for renewal and development, the Property was a potent reminder of development stagnation in the CCW area. Prior to its use as a parking lot, the Property reportedly contained several decrepit hotel structures. Plaintiff is informed and believes that the Property contained a rundown and dilapidated building that was demolished by the prior owner in 1990 that consisted of approximately 34 individual hotel "rooms" 267 square feet in size that were without kitchens or bathrooms and did not provide for parking. Plaintiff is informed and believes that another hotel building, consisting of approximately 24 units, was also located on the Property and was also demolished by the prior owner in 1986. Plaintiff is informed and believes that the total square footage of the residential hotels located on the Property was roughly 16,575 square feet.

19. As the owner of the Property and the applicant developer of the Piero II, at all times relevant herein, Plaintiff has standing herein and maintains a beneficial interest in this action.

20. On or about October 4, 2006, Plaintiff filed a Master Land Use Permit Application (the "Application") seeking Planning Department approval for the Piero II Project.

21. Due to its location, the Property and the Piero II fall under the ambit of certain zoning and land-use provisions contained in the <u>City's Westlake Community Plan</u> (the "<u>General Plan</u>") and the more geographically focused, <u>Central City West Specific Plan</u>, Ordinance No. 167,944 (the "<u>Specific Plan</u>").

22. The provisions of the <u>Specific Plan</u> that are central to the claims raised in this complaint are the so-called replacement dwelling provisions of the <u>Specific</u>

Plan, namely,   Specific Plan §§11.C *et seq.* (the "Replacement Dwelling Provision" or the "RDP"). In short summary, the RDP is a replacement housing ordinance designed and intended, in essence, to require developers to replace affordable housing in new developments constructed on sites where affordable housing was previously demolished. The RDP reads, in relevant part, as follows (emphasis added):

"... **Section 11. HOUSING REQUIREMENTS** ....

C.    **Replacement Dwelling Units** ....

2.    **Residential and Mixed Use Projects**

a.    All multiple-family residential or Mixed Use Project Applicants shall be required to do one of the following, whichever results in the greater number of dwelling units:

(1)    Document and replace, on a one-for-one basis in the form of new dwelling unit construction, Low and Very Low Income Dwelling Units and/or guest rooms demolished on the lot or lots on or after February 14, 1988; or

(2)    Designate and reserve a total of 15% of the dwelling units within the Project as Low Income Dwelling    Units. ...

d.    **In Lieu Credits**. In lieu of the requirements of this Subdivision, a multiple family residential Project Applicant may pay a fee.

(1)    The in lieu fee for a required Very Low Income Dwelling Unit shall be $100,576.14 per unit.

(2)    The in lieu fee for a required Low Income Dwelling Unit shall be $78,883.41 per unit. ...

E.    **Dwelling Unit Rent Levels**

1.    **Very Low Income Dwelling Unit.** The monthly rent level for a Very Low Income Dwelling Unit required pursuant to this Section shall not exceed 30% of 50% of the median monthly income for persons or families residing in the Los Angeles Standard Metropolitan Statistical Area. The median monthly income shall be as determined and published periodically by the Federal Housing and Urban Development Department.

2. **Low Income Dwelling Unit.** The monthly rent level for a Low Income Dwelling Unit required pursuant to this Section shall not exceed 30% of 80% of the median monthly income for persons or families residing in the Los Angeles Standard Metropolitan Statistical Area. The median monthly income shall be as determined and published periodically by the Federal Housing and Urban Development Department."

23. Based upon Plaintiff's prior dealings with Defendant regarding applying the RDP to Plaintiff's prior developments, pursuant to the administrative procedures set forth in <u>LAMC</u> §11.5.7, Plaintiff requested an exception and waiver from the requirements of the RDP from the Planning Commission such that Plaintiff would neither provide the required 15% inclusionary housing units as Low Income Dwelling Units nor pay an in-lieu fee for that purpose ("the Request"). Plaintiff did so, in order, among other things, to preempt the Planning Department's wrongful application of the RDP to the Piero II.

24. The Planning Commission took up the Request, and, after a series of public evidentiary hearings before the Planning Commission, on or about September 25, 2006, the Planning Commission issued its adjudicatory determination disapproving Plaintiff's Request.

25. Said Request disapproval, however, was part of the larger determination and approvals made by the Planning Commission in connection with its Specific Plan Project Permit Compliance that approved permit compliance subject to certain conditions. Condition No. 10, that was essentially a modification of the RDP requiring Plaintiff to satisfy one of three purported "alternatives" to the RDP in order to gain approval for the Piero II, provided as follows:

(A) Option A (Low Income Dwelling Units On-site). Plaintiff must set aside 60 dwelling units of the Project for low income housing pursuant to the terms of an agreement with the City that provides that these units will be used for low-income for 30 years, that they have a specified mix of studio, 1-bedroom and dual master apartments and the rent for the units be maintained at a specified level of rent;

(B) Option B (Low Income Dwelling Units Off-Site). Plaintiff must set aside 60 dwelling units (or portion thereof) of the Project for low income housing at an off-site location within the Central City

9

**COMPLAINT**

West Specific Plan Area and/or within the boundaries of City Council District 1, subject to certain conditions; or

(C)   Option C Low Income Dwelling Units (In Lieu fees). As an alternative to providing the replacement housing units within the Project (either on-site or off-site), as set forth in Options A and B, Plaintiff may instead pay an in-lieu fee in the amount of $96,182.17 for each of the 60 Low Income dwelling units, or a portion thereof.

26.   Essentially, the Planning Commission's "disapproval" of the Request (and approval of the Project Permit Compliance based on certain conditions) was no more than a wrongful application of the full requirements of the RDP to the Piero II. Due to the wrongful and unjustified application of the RDP to the Piero II, Plaintiff notified the Planning Commission that it disagreed with the action disapproving of Plaintiff's Request and imposing Condition No. 10 on the Piero II, and, pursuant to the administrative procedures set forth by LAMC §11.5.7, on or about October 9, 2006, Plaintiff timely appealed the Planning Commission's decision to the Council. Plaintiff's appeal requested that the Council overrule the Planning Commission, expunge Condition No. 10 in its entirety, and approve the Request without condition.

27.   Plaintiff's appeal to the Council was based, verbally and in writing, on several grounds for overturning the Planning Commission's decision, as alleged herein, which grounds are summarized as follows:

a.   The disapproval of the Request and the imposition of Condition No. 10 constituted a violation of the Costa-Hawkins Rental Housing Act (*Cal. Civ. Code* §§1954.50 *et seq.*) ("Costa-Hawkins") because, among other things, it would interfere with the applicant's right to set initial rents and because Costa-Hawkins preempts the area of rent control regulation;

b.   The disapproval of the Request and the imposition of Condition No.10 violated the Mitigation Fee Act in that, among other things, in essence, there was no reasonable relationship between the exaction/fee and the cost to the public attributable to the development;

**COMPLAINT**

1  c.   The disapproval of the Request and the imposition of Condition No.10
2       constituted an unconstitutional "regulatory" taking because the City did
3       not show the constitutionally required nexus between the exaction and the
4       governmental purpose involved, nor the constitutionally required rough
5       proportionality between the exaction and the public burdens created by
6       the Piero II;
7  d.   The disapproval of the Request and the imposition of Condition No.10
8       constituted an unconstitutional "physical" taking because it required the
9       applicant to rent dwelling units to a particular class of people;
10 e.   The disapproval of the Request and the imposition of Condition No.10
11      constituted a violation of the Equal Protection Clause because provisions
12      like the RDP have not been applied to similarly situated property owners
13      throughout the City of Los Angeles and/or because Condition No.10
14      violated the Piero II's future tenants' equal protection rights by requiring
15      them, in effect, to subsidize, in part, the affordable units; and
16 f.   The disapproval of the Request and the imposition of Condition No.10
17      was an abuse of discretion because the decision was not in accordance
18      with the law, not supported by proper or adequate findings, and the
19      findings were not supported by substantial evidence.
20 28.  On or about November 28, 2006, a preliminary public hearing on Plaintiff's
21      appeal was held before the Planning and Land Use Management Committee of
22      the City Council (the PLUM Committee). As a result of the hearing, the PLUM
23      Committee issued its report (the "PLUM Report") recommending that the
24      Council deny Plaintiff's Request and to enforce the RDP requirements.
25 29.  On or about December 12, 2006, Plaintiff's final appeal was heard before the
26      Council as per LAMC §11.5.7 et seq. At the hearing, the PLUM Committee
27      submitted its PLUM Report for the Council's consideration. After a short,
28      public evidentiary hearing, the Council, in an abusive exercise of its

1    discretionary judgment, decided to adopt the findings and recommendations of
2    PLUM Report (the "City's Decision" or the "Action"). (A true and correct copy
3    of the PLUM Report and Council adoption thereof is attached hereto as Exhibit
4    "G", and incorporated herein by this reference as though set forth at length).
5    Plaintiff has now exhausted its administrative and other judicial remedies and
6    is entitled to seek redress from this Court.

7  30.   In connection with the City's Decision, the Council adopted various findings
8         contained in the Council file, in the Planning Commission determinations,
9         and/or in the Planning Department staff reports (collectively, the "Findings").
10        These Findings were not based on substantial evidence and/or were not
11        sufficient to support the City's Decision.

12 31.   Plaintiff is informed, believes and thereupon alleges that the City's Decision was
13        clearly politically motivated and not based on the merits, and that, among other
14        things, the Council was motivated by animus against Plaintiff and its principal,
15        Geoff Palmer, and/or intended to pander to the political agendas of the special
16        interest groups who opposed Plaintiff's project.

17 32.   In making the City's Decision to adopt the PLUM Report, the Council thereby
18        denied Plaintiff's final administrative appeal to expunge Condition No. 10 and
19        upheld the disapproval of the Piero II's Request for an exception to the RDP.
20        Thus, the Council's vote required Plaintiff to comply with all terms and
21        provisions of the RDP, without exception.

22 33.   Thereafter, Plaintiff and Palmer filed a petition for administrative mandamus,
23        alleging, among other things, that the application of section 11.C's affordable
24        housing requirement was preempted by and violated Costa-Hawkins, and
25        violated the United States and California Constitutions.

26  ///
27  ///
28  ///

F:\wpdocs\GH Palmer\6th Street\Pleadings\complaint federal 1st amended.wpd          **COMPLAINT**

12

## FIRST CLAIM FOR RELIEF

### (For Inverse Condemnation –

### As against all Named Defendants)

34.   Plaintiff hereby incorporates by this reference paragraphs 1 through 33, above, as though fully set forth at length herein.

35.   **First**, the imposition of the RDP on the Piero II constitutes an illegal and discretionary, permanent and/or temporary "regulatory" taking of Plaintiff's property in violation of *U.S. Const.*, 5th Amend. in that, among other things:

a.   Defendant's application of the RDP to the Piero II would have had an adverse economic impact on Plaintiffs by, among other things, forcing Palmer to build and rent certain units in the Piero II at a discount below the market rate or to pay an in lieu fee;

b.   Defendant's application of the RDP to the Piero II would have forced Palmer to rent at below market rates to certain tenants, constituting a "wealth transfer" from Palmer, the owner of the subject property, to certain tenants receiving the benefit of below market rate rental units, who thereby would receive a resulting "transfer premium;"

c.   Defendant's application of the RDP to the Piero II would have created significant economic harm to Palmer, regardless of whether Palmer realized a rate of return comparable to other real estate developers, or not;

d.   Defendant's application of the RDP to the Piero II adversely affected Palmer's distinct investment-backed expectations and damaged Palmer's ability to get financing for the Project;

e.   The character of the City's action in applying the RDP to the Piero II constituted a government action that places a high burden on a few property owners that should more fairly be apportioned among the entire tax base because the public as a whole should pay for the benefit of

1  affordable housing, and not solely owners of real estate or a singular,
2  narrow and separate subset of landowners.

3  36.  **Second**, the City's Decision to impose the RDP on the Piero II constituted an
4  illegal and discretionary, permanent and/or temporary "regulatory" taking of
5  Plaintiff's property in violation of *U.S. Const.*, 5th Amend. in that, among other
6  things, Defendant did not make specific findings, based on substantial evidence,
7  regarding the following matters, among others:

8  a.  The existence of a **nexus** between Defendant's application of the RDP to
9      the Piero II and the stated purposes of the Specific Plan and the RDP
10     itself; and

11  b.  That imposition of the RDP on the Piero II is **roughly proportional** to
12      the impact the Piero II would have on the CCW area's affordable housing
13      supply if the RDP is not applied.

14  37.  **Third**, the City's Decision to impose the RDP on the Piero II constituted an
15  illegal and discretionary, permanent and/or temporary "regulatory" taking of
16  Plaintiff's property in that, among other things:

17  a.  The imposition of the RDP on the Piero II did not substantially advance
18      any legitimate state interest and/or is not reasonably necessary for the
19      effectuation of a substantial public purpose in that, among other things,
20      the provision would not increase the production of affordable housing nor
21      improve the jobs-housing balance in the CCW area.  In fact, since the
22      adoption of the Specific Plan, the provision has impeded and/or virtually
23      prevented development of housing in the CCW area so much that, until
24      the Medici project was built, Plaintiff is informed and believes that no
25      private and unsubsidized market-rate housing development had been
26      produced in the CCW area in over 30 years. In addition, Plaintiff is
27      informed and believes that Planning Department Staff Reports have
28      indicated and advised that a *repeal* of the RDP would stimulate

development in the CCW area and would, ultimately, serve to fulfill the fundamental housing goals stated in the <u>Specific Plan</u>;

b.  The imposition of the RDP on the Piero II did not substantially advance any legitimate state interest in that, among other things, Defendant's justification for the imposition of the RDP on the Piero II does not reasonably relate to the Piero II, and the imposition of Section 11. C on the Piero II does not reasonably serve the <u>Specific Plan's</u> stated interests because, *inter alia*, Defendant has not and cannot produce substantial and substantiated evidence demonstrating that residential development projects in the CCW area, such as the Piero II, if not subjected to the requirements of the RDP, would adversely affect the supply of affordable housing in the area;

c.  The imposition of the RDP on the Piero II would not permit Plaintiff to profit and obtain a reasonable return on its investment. The RDP would drastically reduce or even eliminate the Piero II's operating profits, thus denying Plaintiff a reasonable return on its investment;

d.  The imposition of the RDP on the Piero II would not provide Plaintiff any benefits or rights that mitigate whatever financial burdens the imposition of the RDP would place on Plaintiff.

e.  The imposition of the RDP on the Piero II would prevent the highest and best use of the Property in that the highest and best use of the Property is the construction of market-rate housing. As planned, the Piero II will help to alleviate the tremendous market-rate housing shortage in the CCW area;

f.  The imposition of the RDP on the Piero II would extinguish a fundamental attribute of Plaintiff's ownership rights, in particular, *inter alia*, the right to exclude others; and/or

g. The imposition of the RDP on the Piero II was an invalid government demand and imposition on the subject property as a condition for granting the permit.

38. **Fourth**, in addition or in the alternative, the imposition of Section 11.C.2.a.2 of the RDP (in conjunction with <u>Specific Plan,</u> Section 11.E *et seq.*) on the Piero II constitutes illegal rent control that rises to the level of an illegal and discretionary, permanent and/or temporary "regulatory" taking in that, among other things:

a. Defendant's imposition of Section 11.C.2.a.2 of the RDP (in conjunction with <u>Specific Plan,</u> Section 11.E *et seq.*) on the Piero II effectively would have capped 15% of the Piero II's allowable rents at a fixed rate with only limited increases and thus constituted an unauthorized and illegal form of rent control;

b. Defendant's imposition of Section 11.C.2.a.2 of the RDP (in conjunction with <u>Specific Plan,</u> Section 11.E *et seq.*) on the Piero II constitutes an imposition of rent control without providing Plaintiff with any statutory or administrative mechanisms to safeguard against the confiscatory results of its application; thus, the imposition of these provisions on the Property would have denied Plaintiff the ability to earn fair, just and reasonable returns on its investment. The RDP does not contain any mechanism or proviso designed to take into consideration, or make any adjustments for, the value of investments made by Plaintiff with respect to the Property, the amount of return Plaintiff needs to recoup those investments, and the per-unit operating income required by Plaintiff to adequately finance the development of Piero II and/or secure a fair, just and reasonable return on those investments;

c. Defendant's imposition of Section 11.C.2.a.2 of the RDP (in conjunction with <u>Specific Plan,</u> Section 11.E *et seq.*) on the Piero II constituted an

1    imposition of rent control that left Plaintiff unprotected against, *inter alia*,

2    the effects of inflation, anticipated or unanticipated increased operating

3    costs, or anticipated or unanticipated capital expenditures;

4    d.    Defendant's imposition of Section 11.C.2.a.2 of the RDP (in conjunction

5    with <u>Specific Plan,</u> Section 11.E *et seq.*) on the Piero II constituted an

6    imposition of illegal rent control without providing Plaintiff with any

7    mechanism for adjustments, abatements, exceptions or waivers therefrom

8    even if Plaintiff had reasonable and legitimate reasons for said

9    adjustments, abatements, exceptions or waivers; and/or

10    e.    Defendant's imposition of Section 11.C.2.a.2 of the RDP (in conjunction

11    with <u>Specific Plan,</u> Section 11.E *et seq.*) on the Piero II constituted an

12    imposition of illegal rent control in an arbitrary and discriminatory

13    fashion in that, among other things, would have forced Plaintiff to set

14    rates on 15% of the Piero II units at a base rate not in any way related to,

15    or comparable with, the base rates for units subject to rent control outside

16    the CCW area.

17    39.    **Fifth,** in addition or in the alternative, the City's Decision to impose the RDP

18    on the Piero II constituted an illegal and discretionary "physical" taking of

19    Plaintiff's property in so far as, among other things:

20    a.    Defendant's imposition of Section 11.C.2.a.2 of the RDP on the Piero II

21    was a *per se* physical occupation of Plaintiff's property in that Plaintiff

22    would have been forced to accept the occupation of low income tenants

23    not already in residence, in violation of Plaintiff's fundamental right to

24    exclude others from occupying or using the Property owned by Plaintiff;

25

26    b.    Defendant's imposition of Section 11.C.2.a.2 of the RDP on the Piero II

27    denied Plaintiff's economically viable use of the Property and property

28    rights because, among other things, Plaintiff would have been unable to

continue to engage profitably in the business for which it invested its capital; Plaintiff was unable to finance and build any market-rate residential development on the Property on any reasonable basis; Plaintiff's right to dispose of the property for any sums reasonably approaching its investment was impaired; and/or Plaintiff's reasonable investment backed expectations have been diminished;

c.  Defendant's imposition of Section 11.C.2.a.2 of the RDP on the Piero II did not substantially advance any legitimate state interest. The provision would not increase the production of affordable housing nor improve the jobs-housing balance in the CCW area. In fact, since the adoption of the Specific Plan, the provision has impeded and/or virtually prevented development of housing in the CCW area so much that, until the Medici project was built, Plaintiff is informed and believes that no private and unsubsidized market-rate housing development had been produced in the CCW area in over 30 years. In addition, recent Planning Department Staff Reports indicate and advise that a *repeal* of the RDP would stimulate development in the CCW area and would, ultimately, serve to fulfill the fundamental housing goals stated in the Specific Plan.

40.  Defendant had adjudicatory discretion to apply, modify, interpret or waive provisions of the Specific Plan and/or the RDP as they apply to property developments covered within the Specific Plan area, and had the free discretion to approve or disapprove entitlement grants relating thereto or to make the determination that they did not apply to a particular project.

41.  As a proximate result of the City's acts and omissions as alleged herein, the Piero II project and its financing have been delayed and prevented from moving forward and Plaintiff has suffered general, special, consequential, compensatory and/or incidental damages, including, but not limited to: losses due to a reduction in the fair market value of the Property and/or the Piero II project in

the tens of millions of dollars;  a reduction of tens of millions of dollars in the amount of financing Palmer is able to obtain for the Property and/or the Piero II project due to the change in the credit and real estate markets that occurred during the period of delay caused by the City; the amount of additional interest on existing loans, real estate taxes and other carrying costs paid by Palmer during the period of delay caused by the City, in the millions of dollars; increased future costs of financing, in the tens of millions of dollars, including additional interest and other sums that will have to be paid because, among other things, during the period of delay, the credit and real estate markets have changed and financing cannot now be found on terms as advantageous as they were when Palmer could have moved forward with the Piero II project, but for the acts and omissions of the City; lost opportunity and other costs, in the tens of millions of dollars, due to the fact that Palmer will now have to invest significantly more equity in the Piero II project because, during the period of delay caused by the City, among other things, the credit and real estate markets have changed such that loans for this type of project can only be obtained on significantly lower loan to value or cost ratios, requiring a much larger percentage of equity cushion and a much higher equity investment by Plaintiffs; loss of use; and loss of rental and other revenues and profits, in the tens of millions of dollars, all in an unascertained amount, according to proof.

42.    Plaintiff has received no compensation for the taking of its Property.

43.    To the extent that the aforementioned takings are deemed to have been invalidated by any actions including, but not limited to, the aforementioned Trial Court Decision and/or Court of Appeal Decision, Plaintiff alleges that the aforementioned takings constitute temporary takings, because the City's activities have already risen to the level of a taking of the Property and no subsequent action by the City can relieve it of its duty to provide compensation for the period during which the taking was effective.  Invalidation of the subject

1    ordinance by Defendant or the decision to not now impose Section 11.C.2.a.2

2    of the RDP (in conjunction with <u>Specific Plan</u>, Section 11.E *et seq.*) upon the

3    Piero II, without payment of fair value for the use of the property during such

4    period, would be a constitutionally insufficient remedy.

5    44.   Plaintiff has incurred and/or will incur attorneys' fees and other fees and costs

6    because of this proceeding which are recoverable.

**SECOND CLAIM FOR RELIEF**

**(For Violation of Equal Protection (As Applied) -**

**As against all Named Defendants)**

10   45.   Plaintiff hereby incorporates by this reference paragraphs 1 through 44, above,

11   as though fully set forth at length herein.

12   46.   **First,** the City's imposition of the RDP to the Piero II constituted a state action

13   in violation of Plaintiff's equal protection rights under *U.S. Const.*, 14th Amend.

14   In this regard, Plaintiff is informed and believes that Defendant has granted

15   other CCW area property development applicants similarly situated to Plaintiff

16   various modifications, waivers, agreements, and/or incentives in conjunction

17   with the application of the RDP to those applicants' prospective developments.

18   In this case and without any legitimate justification, Defendant tried to force

19   Plaintiff to comply with the strict letter of the RDP, unmodified, even though no

20   affordable housing units, or any other type of housing units have been located

21   or demolished from the Property for over 16 years and that the Property had

22   been used as a parking lot at all relevant times herein. There is no basis, rational

23   or otherwise, for the City's Decision to try to force Plaintiff to abide by

24   restrictions not placed on similarly situated landowners. Thus, Defendant has

25   violated Plaintiff's equal protection rights under *U.S. Const.*, 14th Amend. and

26   have, without a rational basis, unreasonably and arbitrarily applied the RDP to

27   the Piero II while denying Plaintiff any of the modifications, waivers or

28   incentives offered to similarly situated landowners.

47. **Second,** in addition or in the alternative, the affordable housing burdens created by the RDP are imposed on a singular, narrow and separate class of City landowners, including Plaintiff, who happen to own property located inside the CCW sub-area. Plaintiff is informed and believes that no other sub-area of the City is subject to the RDP and no other sub-area's Specific Plan imposes affordable housing requirements similar to those contained in the RDP. In addition, the provisions of the RDP were adopted without adequate study, evaluation, findings, evidence or other consideration by Defendant sufficient to demonstrate any basis, rational or otherwise, for treating CCW area landowners and their properties, including Plaintiff, the Property and the Piero II, differently from similarly situated landowners and properties located in other sub-areas of the City. The problems proposed to be solved by enactment of the RDP, *inter alia,* the lack of affordable housing and the jobs-housing imbalance, are problems in virtually every sub-area of the City.

48. **Third,** in addition or in the alternative, the City's Decision to apply the RDP to the Piero II violated the equal protection rights of future tenants of the Piero II's "market-rate" units because, among other things, the RDP has the practical effect of increasing housing costs for market-rate units. Under the RDP, market-rate tenants would be required, in effect, to bear and subsidize, in part, the rents of lower-income units imposed by the RDP. The Specific Plan does not equitably apportion the economic burden of achieving compliance with the RDP, and there is no basis, rational or otherwise, for requiring the separate class of market-rate tenants to bear the burden of subsidizing rents of their low-income neighbors. Plaintiff is and will be adversely affected and damaged by the same. Thus, Defendant has violated Plaintiff's equal protection rights under *U.S. Const.,* 14th Amend.

49. As a proximate result of the City's acts and omissions as alleged herein, the Piero II project and its financing have been delayed and prevented from moving

forward and Plaintiff has suffered general, special, consequential, compensatory and/or incidental damages, including, but not limited to: losses due to a reduction in the fair market value of the Property and/or the Piero II project in the tens of millions of dollars;  a reduction of tens of millions of dollars in the amount of financing Palmer is able to obtain for the Property and/or the Piero II project due to the change in the credit and real estate markets that occurred during the period of delay caused by the City; the amount of additional interest on existing loans, real estate taxes and other carrying costs paid by Palmer during the period of delay caused by the City, in the millions of dollars; increased future costs of financing, in the tens of millions of dollars, including additional interest and other sums that will have to be paid because, among other things, during the period of delay, the credit and real estate markets have changed and financing cannot now be found on terms as advantageous as they were when Palmer could have moved forward with the Piero II project, but for the acts and omissions of the City; lost opportunity and other costs, in the tens of millions of dollars, due to the fact that Palmer will now have to invest significantly more equity in the Piero II project because, during the period of delay caused by the City, among other things, the credit and real estate markets have changed such that loans for this type of project can only be obtained on significantly lower loan to value or cost ratios, requiring a much larger percentage of equity cushion and a much higher equity investment by Plaintiffs; loss of use; and loss of rental and other revenues and profits, in the tens of millions of dollars, all in an unascertained amount, according to proof.

50.   Plaintiff has incurred and/or will incur attorney fees and other fees and costs because of this proceeding, which are recoverable.

///

///

///

## THIRD CLAIM FOR RELIEF

### (For Violation of Due Process (As Applied) -

### As against all Named Defendants)

51. Plaintiff hereby incorporates by this reference paragraphs 1 through 50, above, as though fully set forth at length herein.

52. Defendant violated Plaintiff's due process rights under *U.S. Const.*, 14th Amend. in that, among other things:

    a.    Defendant's imposition of Section 11.C.2.a.2 of the RDP (in conjunction with <u>Specific Plan,</u> Section 11.E *et seq.*) on the Piero II effectively capped the Piero II's allowable rents at a fixed rate with only limited increases and thus constituted an improper form of rent control;

    b.    Defendant has imposed the illegal rent controls contained in Section 11.C.2.a.2 of the RDP (in conjunction with <u>Specific Plan,</u> Section 11.E *et seq.*) on the Piero II without providing Plaintiff with any statutory or administrative structural features that safeguard against confiscatory results in applying such controls. Thus, the imposition of these provisions on the Property denied Plaintiff the ability to earn fair, just and reasonable returns on its investment. These provisions do not contain any mechanism or proviso designed to take into consideration, or make any adjustments for, the value of investments made by Plaintiff with respect to the Property, the amount of return Plaintiff needs to recoup this investment, and the per-unit operating income required by Plaintiff to adequately finance the development of the Piero II and/or as secure a fair, just and reasonable return on its investment;

    c.    Defendant has imposed the illegal rent controls contained in Section 11.C.2.a.2 of the RDP (in conjunction with <u>Specific Plan,</u> Section 11.E *et seq.*) on the Piero II in a manner which left Plaintiff unprotected against,

1               *inter alia*, the effects of inflation, anticipated or unanticipated increased

2               operating costs, or anticipated or unanticipated capital expenditures;

3    d.    Defendant has imposed the illegal rent controls contained in Section

4               11.C.2.a.2 of the RDP (in conjunction with <u>Specific Plan,</u> Section 11.E *et*

5               *seq.*) without providing Plaintiff with any mechanism for adjustments,

6               abatements, exceptions or waivers therefrom even if Plaintiff had

7               reasonable and legitimate reasons for said adjustments, abatements,

8               exceptions or waivers; and/or

9    e.    Defendant has imposed the illegal rent controls contained in Section

10               11.C.2.a.2 of the RDP (in conjunction with <u>Specific Plan,</u> Section 11.E *et*

11               *seq.*) without any basis, rational or otherwise, for forcing Plaintiff to

12               accept initial base rents far below the market-value of those units and far

13               below the initial base rents of similarly situated property owners subject

14               to rent control within the City and County of Los Angeles.

15   53.    Defendant had adjudicatory discretion to apply, modify, or waive provisions of

16        the <u>Specific Plan</u> as they apply to property developments within the CCW area

17        and had the discretion to approve or disapprove entitlement grants relating

18        thereto or to make the determination that they did not apply to a particular

19        project.

20   54.    As a proximate result of the City's acts and omissions as alleged herein, the

21        Piero II project and its financing have been delayed and prevented from moving

22        forward and Plaintiff has suffered general, special, consequential, compensatory

23        and/or incidental damages, including, but not limited to: losses due to a

24        reduction in the fair market value of the Property and/or the Piero II project in

25        the tens of millions of dollars; a reduction of tens of millions of dollars in the

26        amount of financing Palmer is able to obtain for the Property and/or the Piero

27        II project due to the change in the credit and real estate markets that occurred

28        during the period of delay caused by the City; the amount of additional interest

1    on existing loans, real estate taxes and other carrying costs paid by Palmer

2    during the period of delay caused by the City, in the millions of dollars;

3    increased future costs of financing, in the tens of millions of dollars, including

4    additional interest and other sums that will have to be paid because, among other

5    things, during the period of delay, the credit and real estate markets have

6    changed and financing cannot now be found on terms as advantageous as they

7    were when Palmer could have moved forward with the Piero II project, but for

8    the acts and omissions of the City; lost opportunity and other costs, in the tens

9    of millions of dollars, due to the fact that Palmer will now have to invest

10    significantly more equity in the Piero II project because, during the period of

11    delay caused by the City, among other things, the credit and real estate markets

12    have changed such that loans for this type of project can only be obtained on

13    significantly lower loan to value or cost ratios, requiring a much larger

14    percentage of equity cushion and a much higher equity investment by Plaintiffs;

15    loss of use; and loss of rental and other revenues and profits, in the tens of

16    millions of dollars, all in an unascertained amount, according to proof.

17  55.    Plaintiff has incurred and/or will incur attorneys' fees and other fees and costs

18    because of this proceeding, which are recoverable.

19                **FOURTH CLAIM FOR RELIEF**

20        **(For Violation of Civil Rights under 42 *U.S.C.* §1983 -**

21              **As against all Named Defendants)**

22  56.    Plaintiff and Palmer hereby incorporates by this reference paragraphs 1 through

23    55, above, as though fully set forth at length herein.

24  57.    The City's Decision  to impose the RDP on the Piero II was a decision

25    committed by government officials under color of state law.  The City's

26    Decision constitutes a violation of Plaintiff's and Palmer's civil rights under 42

27    *U.S.C.* §1983 in that, among other things, under color of the <u>Specific Plan</u>

28    and/or RDP, Defendant has subjected Plaintiff and Palmer to a deprivation of

1    their rights and privileges under the United States Constitution as set forth
2    herein.

3    58.  Additionally, Plaintiffs are informed and believe, and based thereon allege that
4         Defendant's animus toward Plaintiff and Palmer and their violation of Plaintiff's
5         and Palmer's constitutional rights is politically motivated and is based on,
6         among other things, Councilman Ed Reyes' personal animus against Plaintiff
7         and its general partner, Palmer, for, among other things, the prior litigations
8         between the City of Los Angeles and Palmer, in which Palmer and his entities
9         have litigated successfully against the City's unlawful conduct. In each of these
10        prior litigations, the subject property in dispute has been in Councilman Reyes'
11        district. Councilman Reyes has done little more than pander to the pro-tenant
12        political factions in a transparent attempt to garner their political support. It
13        appears that in retaliation for Palmer's prior successful efforts in challenging the
14        City's and Councilman Reyes' conduct in court, Defendant has sought to exact
15        a certain measure of punishment and "payback" (under the guise of acting under
16        state law) against Plaintiff and Palmer all in violation of Plaintiff's and Palmer's
17        constitutionally protected rights. Being motivated by improper animus, in
18        derogation of Plaintiff's and Palmer's constitutional rights, the City's Decision
19        is actionable under 42 *U.S.C.* §1983.

20   59.  As a proximate result of the City's acts and omissions as alleged herein, the
21        Piero II project and its financing have been delayed and prevented from moving
22        forward and Plaintiff has suffered general, special, consequential, compensatory
23        and/or incidental damages, including, but not limited to: losses due to a
24        reduction in the fair market value of the Property and/or the Piero II project in
25        the tens of millions of dollars; a reduction of tens of millions of dollars in the
26        amount of financing Palmer is able to obtain for the Property and/or the Piero
27        II project due to the change in the credit and real estate markets that occurred
28        during the period of delay caused by the City; the amount of additional interest

1   on existing loans, real estate taxes and other carrying costs paid by Palmer
2   during the period of delay caused by the City, in the millions of dollars;
3   increased future costs of financing, in the tens of millions of dollars, including
4   additional interest and other sums that will have to be paid because, among other
5   things, during the period of delay, the credit and real estate markets have
6   changed and financing cannot now be found on terms as advantageous as they
7   were when Palmer could have moved forward with the Piero II project, but for
8   the acts and omissions of the City; lost opportunity and other costs, in the tens
9   of millions of dollars, due to the fact that Palmer will now have to invest
10  significantly more equity in the Piero II project because, during the period of
11  delay caused by the City, among other things, the credit and real estate markets
12  have changed such that loans for this type of project can only be obtained on
13  significantly lower loan to value or cost ratios, requiring a much larger
14  percentage of equity cushion and a much higher equity investment by Plaintiffs;
15  loss of use; and loss of rental and other revenues and profits, in the tens of
16  millions of dollars, all in an unascertained amount, according to proof.

17  60.   Additionally, Plaintiff and Palmer have incurred and/or will incur attorney's fees
18  and other fees and costs because of this proceeding, which are recoverable
19  pursuant to 42 *U.S.C.* §1988.

20  **FIFTH CLAIM FOR RELIEF**
21  **(For Inverse Condemnation Under the California**
22  **Constitution (California Const., Art. I, §19) -**
23  **As against all Named Defendants)**

24  61.   Plaintiff hereby incorporates by this reference paragraphs 1 through 60, above,
25  as though fully set forth at length herein.

26  62.   **First**, the imposition of the RDP on the Piero II constitutes an illegal and
27  discretionary, permanent and/or temporary "regulatory" taking of Plaintiff's
28  property in violation of *Cal. Const.*, Art. I, § 19, in that, among other things:

a.  Defendant's application of the RDP to the Piero II would have had an adverse economic impact on Plaintiffs by, among other things, forcing Palmer to build and rent certain units in the Piero II at a discount below the market rate or to pay an in lieu fee;

b.  Defendant's application of the RDP to the Piero II, would have forced Palmer to rent at below market rates to certain tenants, constituting a "wealth transfer" from Palmer, the owner of the subject property, to certain tenants receiving the benefit of below market rate rental units, who thereby would receive a resulting "transfer premium;"

c.  Defendant's application of the RDP to the Piero II would have created significant economic harm to Palmer, regardless of whether Palmer realized a rate of return comparable to other real estate developers, or not;

d.  Defendant's application of the RDP to the Piero II adversely affected Palmer's distinct investment-backed expectations and damaged Palmer's ability to get financing for the project;

e.  The character of the City's action in applying the RDP to the Piero II constituted a government action that places a high burden on a few property owners that should more fairly be apportioned among the entire tax base because the public as a whole should pay for the benefit of affordable housing, and not solely owners of real estate or a singular, narrow and separate subset of landowners.

63.  **Second**, the City's Decision to impose the RDP on the Piero II constituted an illegal and discretionary, permanent and/or temporary "regulatory" taking of Plaintiff's property in violation of *Cal. Const.*, Art. I, §19 in that, among other things, Defendant did not make specific findings, based on substantial evidence, regarding the following matters, among others:

a.    The existence of a **nexus** between Defendant's application of the RDP to the Piero II and the stated purposes of the <u>Specific Plan</u> and the RDP itself; and

b.    That imposition of the RDP on the Piero II is **roughly proportional** to the impact the Piero II would have on the CCW area's affordable housing supply if the RDP is not applied.

64.    **Third**, the City's Decision to impose the RDP on the Piero II constitutes an illegal and discretionary permanent and/or temporary "regulatory" taking of Plaintiff's property in violation of *Cal. Const.*, Art. I, §19 in that, among other things:

a.    The imposition of the RDP on the Piero II did not substantially advance any legitimate state interest and/or is not reasonably necessary for the effectuation of a substantial public purpose in that, among other things, the provision would not increase the production of affordable housing nor improve the jobs-housing balance in the CCW area.  In fact, since the adoption of the <u>Specific Plan</u>, the provision has impeded and/or virtually prevented development of housing in the CCW area so much that, until the Medici project was built, Plaintiff is informed and believes that no private and unsubsidized market-rate housing development had been produced in the CCW area in over 30 years. In addition, Plaintiff is informed and believes that Planning Department Staff Reports have indicated and advised that a *repeal* of the RDP would stimulate development in the CCW area and would, ultimately, serve to fulfill the fundamental housing goals stated in the <u>Specific Plan</u>;

b.    The imposition of the RDP on the Piero II did not substantially advance any legitimate state interest in that, among other things, Defendant's justification for the imposition of the RDP on the Piero II does not reasonably relate to the Piero II, and the imposition of Section 11. C on

the Piero II does not reasonably serve the <u>Specific Plan's</u> stated interests because, *inter alia*, Defendant has not and cannot produce substantial and substantiated evidence demonstrating that residential development projects in the CCW area, such as the Piero II, if not subjected to the requirements of the RDP, would adversely affect the supply of affordable housing in the area;

c.   The imposition of the RDP on the Piero II would not permit Plaintiff to profit and obtain a reasonable return on its investment. The RDP would drastically reduce or even eliminate the Piero II's operating profits, thus denying Plaintiff a reasonable return on its investment;

d.   The imposition of the RDP on the Piero II does not provide Plaintiff any benefits or rights that mitigate whatever financial burdens the imposition of the RDP would place on Plaintiff.

e.   The imposition of the RDP on the Piero II would prevent the highest and best use of the Property in that the highest and best use of the Property is the construction of market-rate housing. As planned, the Piero II will help to alleviate the tremendous market-rate housing shortage in the CCW area;

f.   The imposition of the RDP on the Piero II would extinguish a fundamental attribute of Plaintiff's ownership rights, in particular, *inter alia*, the right to exclude others; and/or

g.   The imposition of the RDP on the Piero II is an invalid government demand and imposition on the subject property as a condition for granting the permit.

65. **Fourth**, in addition or in the alternative, the imposition of Section 11.C.2.a.2 of the RDP (in conjunction with <u>Specific Plan</u>, Section 11.E *et seq.*) on the Piero II constitutes illegal rent control that rises to the level of a permanent and/or

temporary "regulatory" taking of Plaintiff's property in violation of *Cal. Const.*, Art. I, §19 in that, among other things:

a.    Defendant's imposition of Section 11.C.2.a.2 of the RDP (in conjunction with <u>Specific Plan</u>, Section 11.E *et seq.*) on the Piero II effectively would have capped 15% of the Piero II's allowable rents at a fixed rate with only limited increases and thus constituted an unauthorized and illegal form of rent control;

b.    Defendant's imposition of Section 11.C.2.a.2 of the RDP (in conjunction with <u>Specific Plan</u>, Section 11.E *et seq.*) on the Piero II constituted an imposition of rent control without providing Plaintiff with any statutory or administrative mechanisms to safeguard against the confiscatory results of its application; thus, the imposition of these provisions on the Property would have denied Plaintiff the ability to earn fair, just and reasonable returns on its investment.  The RDP does not contain any mechanism or proviso designed to take into consideration, or make any adjustments for, the value of investments made by Plaintiff with respect to the Property, the amount of return Plaintiff needs to recoup those investments, and the per-unit operating income required by Plaintiff to adequately finance the development of Piero II and/or secure a fair, just and reasonable return on those investments;

c.    Defendant's imposition of Section 11.C.2.a.2 of the RDP (in conjunction with <u>Specific Plan</u>, Section 11.E *et seq.*) on the Piero II constituted an imposition of rent control which left Plaintiff unprotected against, *inter alia*, the effects of inflation, anticipated or unanticipated increased operating costs, or anticipated or unanticipated capital expenditures;

d.    Defendant's imposition of Section 11.C.2.a.2 of the RDP (in conjunction with <u>Specific Plan</u>, Section 11.E *et seq.*) on the Piero II constituted an imposition of illegal rent control without providing Plaintiff with any

mechanism for adjustments, abatements, exceptions or waivers therefrom even if Plaintiff has reasonable and legitimate reasons for said adjustments, abatements, exceptions or waivers; and/or

e.   Defendant's imposition of Section 11.C.2.a.2 of the RDP (in conjunction with <u>Specific Plan,</u> Section 11.E *et seq.*) on the Piero II constituted an imposition of illegal rent control in an arbitrary and discriminatory fashion in that, among other things, would have forced Plaintiff to set rates on 15% of the Piero II units at a base rate not in any way related to, or comparable with, the base rates for units subject to rent control outside the CCW area.

66.   **Fifth**, in addition or in the alternative, the City's Decision to impose the RDP on the Piero II constituted an illegal and discretionary, permanent and/or temporary "physical" taking of Plaintiff's property in so far as, among other things:

a.   Defendant's imposition of Section 11.C.2.a.2 of the RDP on the Piero II was a *per se* physical occupation of Plaintiff's property in that Plaintiff would have been forced to accept the occupation of low income tenants not already in residence, in violation of Plaintiff's fundamental right to exclude others from occupying or using the Property owned by Plaintiff;

b.   Defendant's imposition of Section 11.C.2.a.2 of the RDP on the Piero II denied Plaintiff's economically viable use of the Property and property rights because, among other things, Plaintiff would have been unable to continue to engage profitably in the business for which it invested its capital; Plaintiff was unable to finance and build any market-rate residential development on the Property on any reasonable basis; Plaintiff's right to dispose of the property for any sums reasonably

COMPLAINT

1   approaching its investment is impaired; and/or Plaintiff's reasonable
2   investment backed expectations have been diminished;

3   c.   Defendant's imposition of Section 11.C.2.a.2 of the RDP on the Piero II
4        did not substantially advance any legitimate state interest. The provision
5        would not increase the production of affordable housing nor improve the
6        jobs-housing balance in the CCW area. In fact, since the adoption of the
7        Specific Plan, the provision has impeded and/or virtually prevented
8        development of housing in the CCW area so much that, until the Medici
9        project was built, Plaintiff is informed and believes that no private and
10       unsubsidized market-rate housing development had been produced in the
11       CCW area in over 30 years. In addition, recent Planning Department Staff
12       Reports indicate and advise that a *repeal* of the RDP would stimulate
13       development in the CCW area and would, ultimately, serve to fulfill the
14       fundamental housing goals stated in the Specific Plan.

15  67.  Defendant had adjudicatory discretion to apply, modify, interpret or waive
16       provisions of the Specific Plan and/or the RDP as they apply to property
17       developments covered within the Specific Plan area, and had the free discretion
18       to approve or disapprove entitlement grants relating thereto or to make the
19       determination that they did not apply to a particular project.

20  68.  As a proximate result of the City's acts and omissions as alleged herein, the
21       Piero II project and its financing have been delayed and prevented from moving
22       forward and Plaintiff has suffered general, special, consequential, compensatory
23       and/or incidental damages, including, but not limited to: losses due to a
24       reduction in the fair market value of the Property and/or the Piero II project in
25       the tens of millions of dollars; a reduction of tens of millions of dollars in the
26       amount of financing Palmer is able to obtain for the Property and/or the Piero
27       II project due to the change in the credit and real estate markets that occurred
28       during the period of delay caused by the City; the amount of additional interest

on existing loans, real estate taxes and other carrying costs paid by Palmer during the period of delay caused by the City, in the millions of dollars; increased future costs of financing, in the tens of millions of dollars, including additional interest and other sums that will have to be paid because, among other things, during the period of delay, the credit and real estate markets have changed and financing cannot now be found on terms as advantageous as they were when Palmer could have moved forward with the Piero II project, but for the acts and omissions of the City; lost opportunity and other costs, in the tens of millions of dollars, due to the fact that Palmer will now have to invest significantly more equity in the Piero II project because, during the period of delay caused by the City, among other things, the credit and real estate markets have changed such that loans for this type of project can only be obtained on significantly lower loan to value or cost ratios, requiring a much larger percentage of equity cushion and a much higher equity investment by Plaintiffs; loss of use; and loss of rental and other revenues and profits, in the tens of millions of dollars, all in an unascertained amount, according to proof.

69. Plaintiff has received no compensation for the taking of its Property.

70. To the extent that the aforementioned takings are deemed to have been invalidated by any actions including, but not limited to, the aforementioned Trial Court Decision and/or Court of Appeal Decision, Plaintiff alleges that the aforementioned takings constitute temporary takings, because the City's activities have already risen to the level of a taking of the Property and no subsequent action by the City can relieve it of its duty to provide compensation for the period during which the taking was effective. Invalidation of the subject ordinance by Defendant or the decision to not now impose Section 11.C.2.a.2 of the RDP (in conjunction with Specific Plan, Section 11.E et seq.) upon the Piero II, without payment of fair value for the use of the property during such period, would be a constitutionally insufficient remedy.

71.  Plaintiff has incurred and/or will incur attorneys' fees and other fees and costs because of this proceeding, including, but not limited to, those which are recoverable pursuant to *Code of Civ. Proc.* §1036.

### SIXTH  CLAIM FOR RELIEF

**(For Violation of Equal Protection (As Applied) Under**

**The California Constitution (California Const., Art. I, §7) -**

**As against all Named Defendants)**

72.  Plaintiff hereby incorporates by this reference paragraphs 1 through 71, above, as though fully set forth at length herein.

73.  **First,** the City's imposition of the RDP to the Piero II constituted a state action in violation of Plaintiff's equal protection rights under *Cal. Const.*, Art. I §7.  In this regard, among other things, Plaintiff is informed and believes that Defendant has granted other CCW area property development applicants similarly situated to Plaintiff various modifications, waivers, agreements, and/or incentives in conjunction with the application of the RDP to those applicants' prospective developments. In this case and without any legitimate justification, Defendant tried to force Plaintiff to comply with the strict letter of the RDP, unmodified, even though no affordable housing units, or any other type of housing units have been located or demolished from the property for over 16 years and that the property had been used as a parking lot at all relevant times herein.  There is no basis, rational or otherwise, for the City's Decision to try to force Plaintiff to abide by restrictions not placed on similarly situated landowners.  Thus, Defendant has violated Plaintiff's equal protection rights under *Cal. Const.*, Art. I §7 and have, without a rational basis, unreasonably and arbitrarily applied the RDP to the Piero II while denying Plaintiff any of the modifications, waivers or incentives offered to similarly situated landowners.

74.  **Second,** in addition or in the alternative, the affordable housing burdens created by the RDP are imposed on a singular, narrow and separate class of City

1   landowners, including Plaintiff, who happen to own property located inside the

2   CCW sub-area. Plaintiff is informed and believes that no other sub-area of the

3   City is subject to the RDP and no other sub-area's Specific Plan imposes

4   affordable housing requirements similar to those contained in the RDP. In

5   addition, the provisions of the RDP were adopted without adequate study,

6   evaluation, findings, evidence or other consideration by Defendant sufficient to

7   demonstrate any basis, rational or otherwise, for treating CCW area landowners

8   and their properties, including Plaintiff, the Property and the Piero II, differently

9   from similarly situated landowners and properties located in other sub-areas of

10  the City. The problems proposed to be solved by enactment of the RDP, *inter*

11  *alia*, the lack of affordable housing and the jobs-housing imbalance, are

12  problems in virtually every sub-area of the City.

13  75.   As a proximate result of the City's acts and omissions as alleged herein, the

14  Piero II project and its financing have been delayed and prevented from moving

15  forward and Plaintiff has suffered general, special, consequential, compensatory

16  and/or incidental damages, including, but not limited to: losses due to a

17  reduction in the fair market value of the Property and/or the Piero II project in

18  the tens of millions of dollars; a reduction of tens of millions of dollars in the

19  amount of financing Palmer is able to obtain for the Property and/or the Piero

20  II project due to the change in the credit and real estate markets that occurred

21  during the period of delay caused by the City; the amount of additional interest

22  on existing loans, real estate taxes and other carrying costs paid by Palmer

23  during the period of delay caused by the City, in the millions of dollars;

24  increased future costs of financing, in the tens of millions of dollars, including

25  additional interest and other sums that will have to be paid because, among other

26  things, during the period of delay, the credit and real estate markets have

27  changed and financing cannot now be found on terms as advantageous as they

28  were when Palmer could have moved forward with the Piero II project, but for

1    the acts and omissions of the City; lost opportunity and other costs, in the tens

2    of millions of dollars, due to the fact that Palmer will now have to invest

3    significantly more equity in the Piero II project because, during the period of

4    delay caused by the City, among other things, the credit and real estate markets

5    have changed such that loans for this type of project can only be obtained on

6    significantly lower loan to value or cost ratios, requiring a much larger

7    percentage of equity cushion and a much higher equity investment by Plaintiffs;

8    loss of use; and loss of rental and other revenues and profits, in the tens of

9    millions of dollars, all in an unascertained amount, according to proof.

10   76.   Plaintiff has incurred and/or will incur attorney fees and other fees and costs

11         because of this proceeding, which are recoverable.

## SEVENTH  CLAIM FOR RELIEF

### (For Violation of Due Process (As Applied) Under the

### California Constitution (California Const., Art. I, §§7, 15) -

### As against all Named Defendants)

16   77.   Plaintiff hereby incorporates by this reference paragraphs 1 through 76, above,

17         as though fully set forth at length herein.

18   78.   Defendant violated Plaintiff's due process rights under *Cal Const.*, Art. I, §§ 7,

19         15 in that, among other things:

20         a.   Defendant's imposition of Section 11.C.2.a.2 of the RDP (in conjunction

21              with Specific Plan, Section 11.E *et seq.*) on the Piero II effectively capped

22              the Piero II's allowable rents at a fixed rate with only limited increases

23              and thus constituted an improper form of rent control;

24         b.   Defendant has imposed the illegal rent controls contained in Section

25              11.C.2.a.2 of the RDP (in conjunction with Specific Plan, Section 11.E *et*

26              *seq.*) on the Piero II without providing Plaintiff with any statutory or

27              administrative structural features that safeguard against confiscatory

28              results in applying such controls. Thus, the imposition of these provisions

1  on the Property denied Plaintiff the ability to earn fair, just and reasonable

2  returns on its investment.   These provisions do not contain any

3  mechanism or proviso designed to take into consideration, or make any

4  adjustments for, the value of investments made by Plaintiff with respect

5  to the Property, the amount of return Plaintiff needs to recoup this

6  investment, and the per-unit operating income required by Plaintiff to

7  adequately finance the development of the Piero II and/or as secure a fair,

8  just and reasonable return on its investment;

9  c.  Defendant has imposed  the illegal  rent controls contained in Section

10  11.C.2.a.2 of the RDP (in conjunction with <u>Specific Plan,</u> Section 11.E *et*

11  *seq.*) on the Piero II in a manner which left Plaintiff unprotected against,

12  *inter alia,* the effects of inflation, anticipated or unanticipated increased

13  operating costs, or anticipated or unanticipated capital expenditures;

14  d.  Defendant has imposed the illegal rent controls contained in Section

15  11.C.2.a.2 of the RDP (in conjunction with <u>Specific Plan,</u> Section 11.E *et*

16  *seq.*) without providing Plaintiff with any mechanism for adjustments,

17  abatements, exceptions or waivers therefrom even if Plaintiff had

18  reasonable and legitimate reasons for said adjustments, abatements,

19  exceptions or waivers; and/or

20  e.  Defendant has imposed the illegal rent controls contained in Section

21  11.C.2.a.2 of the RDP (in conjunction with <u>Specific Plan,</u> Section 11.E *et*

22  *seq.*) without any basis, rational or otherwise, for forcing Plaintiff to

23  accept initial base rents far below the market-value of those units and far

24  below the initial base rents of similarly situated property owners subject

25  to rent control within the City and County of Los Angeles.

26  79.  Defendant had adjudicatory discretion to apply, modify, or waive provisions of

27  the <u>Specific Plan</u> as they apply to property developments within the CCW area

28  and had the discretion to approve or disapprove entitlement grants relating

F:\wpdocs\GH Palmer\6th Street\Pleadings\complaint federal 1st amended.wpd

COMPLAINT

1    thereto or to make the determination that they did not apply to a particular

2    project.

3    80.    As a proximate result of the City's acts and omissions as alleged herein, the

4           Piero II project and its financing have been delayed and prevented from moving

5           forward and Plaintiff has suffered general, special, consequential, compensatory

6           and/or incidental damages, including, but not limited to: losses due to a

7           reduction in the fair market value of the Property and/or the Piero II project in

8           the tens of millions of dollars;  a reduction of tens of millions of dollars in the

9           amount of financing Palmer is able to obtain for the Property and/or the Piero

10          II project due to the change in the credit and real estate markets that occurred

11          during the period of delay caused by the City; the amount of additional interest

12          on existing loans, real estate taxes and other carrying costs paid by Palmer

13          during the period of delay caused by the City, in the millions of dollars;

14          increased future costs of financing, in the tens of millions of dollars, including

15          additional interest and other sums that will have to be paid because, among other

16          things, during the period of delay, the credit and real estate markets have

17          changed and financing cannot now be found on terms as advantageous as they

18          were when Palmer could have moved forward with the Piero II project, but for

19          the acts and omissions of the City; lost opportunity and other costs, in the tens

20          of millions of dollars, due to the fact that Palmer will now have to invest

21          significantly more equity in the Piero II project because, during the period of

22          delay caused by the City, among other things, the credit and real estate markets

23          have changed such that loans for this type of project can only be obtained on

24          significantly lower loan to value or cost ratios, requiring a much larger

25          percentage of equity cushion and a much higher equity investment by Plaintiffs;

26          loss of use; and loss of rental and other revenues and profits, in the tens of

27          millions of dollars, all in an unascertained amount, according to proof.

28

81.  Plaintiff has incurred and/or will incur attorneys' fees and other fees and costs because of this proceeding, which are recoverable.

### EIGHTH CLAIM FOR RELIEF
### (For Breach of Written Contract
### As against all Named Defendants)

82.  Plaintiff and Palmer hereby incorporate by this reference paragraphs 1 through 81, above, as though fully set forth at length herein.

83.  On or about March 31, 2008, the City and Plaintiffs executed a Covenant and Agreement, also referred to herein as the "Contract" (and attached hereto as Exhibit "D") that was subsequently recorded in the Los Angeles County Recorder's Office on or about April 4, 2008. The Contract contained adequate consideration and obligated the City, among other things, to recommence in good faith and continue the processing of all applications for building and other permits and clearances for the Piero II project including shoring and excavation permits and foundation only permits (collectively, the "Permits and Applications"), and further obligated the City to process and treat Plaintiffs' applications and requests for approval and permits in the same manner that is at least as favorable and not more onerous than the manner in which other similar projects in the City are processed and treated.

84.  In breach of the Contract, among other things, the City has failed to process in good faith all applications for building and other permits and clearances for the Piero II project and/or failed to treat Plaintiffs' applications and requests for approval and permits in the same manner that is at least as favorable and not more onerous than the manner in which other similar projects in the City are processed and treated.  As part of the City's obligation to process the Applications and Permits, there was an implied covenant that the City issue all necessary permits in a timely manner, once Plaintiffs' Applications and Permits had been processed (the "Implied Permit Issuance Covenant").

85.   Plaintiffs have fully performed all of their obligations under the Contract except for any of their obligations which may have been excused by the breach of the City.

86.   Plaintiffs at all times have been and still are ready, willing and able to perform under the Contract. The City, on the other hand, at all relevant times herein, has not been ready, willing and able to perform under the Contract.

87.   The material breaches of the Defendant, as alleged herein, has proximately caused, are causing and will continue to cause damage to the Plaintiffs. By virtue of the foregoing, the Plaintiffs have suffered damages and injuries, justifying an award of general, compensatory, incidental, consequential, special damages and/or other damages, in an unascertained amount, according to proof, but in excess of the minimum jurisdictional limits of this Court.

88.   As a proximate result of the City's acts and omissions as alleged herein, the Piero II project and its financing have been delayed and prevented from moving forward and Plaintiff has suffered general, special, consequential, compensatory and/or incidental damages, including, but not limited to: losses due to a reduction in the fair market value of the Property and/or the Piero II project in the tens of millions of dollars; a reduction of tens of millions of dollars in the amount of financing Palmer is able to obtain for the Property and/or the Piero II project due to the change in the credit and real estate markets that occurred during the period of delay caused by the City; the amount of additional interest on existing loans, real estate taxes and other carrying costs paid by Palmer during the period of delay caused by the City, in the millions of dollars; increased future costs of financing, in the tens of millions of dollars, including additional interest and other sums that will have to be paid because, among other things, during the period of delay, the credit and real estate markets have changed and financing cannot now be found on terms as advantageous as they were when Palmer could have moved forward with the Piero II project, but for

1    the acts and omissions of the City; lost opportunity and other costs, in the tens
2    of millions of dollars, due to the fact that Palmer will now have to invest
3    significantly more equity in the Piero II project because, during the period of
4    delay caused by the City, among other things, the credit and real estate markets
5    have changed such that loans for this type of project can only be obtained on
6    significantly lower loan to value or cost ratios, requiring a much larger
7    percentage of equity cushion and a much higher equity investment by Plaintiffs;
8    loss of use; and loss of rental and other revenues and profits, in the tens of
9    millions of dollars, all in an unascertained amount, according to proof.

10   89.  In additional and/or in the alternative, Plaintiff are entitled to injunctive relief
11        and/or a decree of specific performance, including, but not limited to, the
12        following:

13        a.   commanding, ordering, instructing and/or mandating that the City comply
14             with all terms of the Contract contained herein;

15        b.   commanding, instructing and/or mandating that the City recommence and
16             continue in good faith the processing of all applications for building and
17             other permits and clearances for the Piero II project including shoring and
18             excavation permits and foundation only permits, and further ordering the
19             City to process and treat Plaintiffs' applications and requests for approval
20             and permits in the same manner that is at least as favorable and not more
21             onerous than the manner in which other similar projects in the City are
22             processed and treated;

23        c.   ordering the City to issue all such permits once all applicable
24             requirements have been met; and

25        d.   injunctive relief proscribing and enjoining the City from continuing to
26             violate Plaintiff's constitutional rights in the manner described herein
27             and/or from taking or causing to be taken any actions which would

28

1    interfere with Plaintiffs' Permits and Applications for the Piero II project,
2    and from proceeding with and completing said project.

3                          **NINTH CLAIM FOR RELIEF**

4           **(For Breach of the Covenant of Good Faith and Fair Dealing**

5                       **As against all Named Defendants)**

6    90.  Plaintiff and Palmer hereby incorporate by this reference paragraphs 1 through
7         89, above, as though fully set forth at length herein.

8    91.  In every contract governed by the laws of the State of California there exists an
9         implied covenant of good faith and fair dealing.

10   92.  The aforementioned Contract was entered into and executed in the State of
11        California, was performed or to be performed in the State of California and is
12        governed by the laws of the State of California.

13   93.  Within the last year and/or within the year prior to the filing of the Complaint,
14        Plaintiffs discovered that the City breached the covenant of good faith and fair
15        dealing in the Contract thereby depriving Plaintiffs of the benefit of the bargain,
16        by, among other things, breaching the Implied Permit Issuance Covenant, failing
17        to recommence and continue in good faith the processing of all applications for
18        building and other permits and clearances for the Piero II project and/or failing
19        to process and treat Plaintiffs' applications and requests for approval and permits
20        in the same manner that is at least as favorable and not more onerous than the
21        manner in which other similar projects in the City are processed and treated.

22   94.  The actions of the City that constitute the breach of the covenant of good faith
23        and fair dealing were intentionally taken by the City in a direct response to
24        Plaintiffs' legal challenges to the illegal imposition of the RDP by the City. The
25        City made an intentional decision to take such actions in order to keep and
26        maintain pressure on Plaintiffs to not continue with or change its conduct in
27        litigation against the City and not attempt to invalidate the illegal imposition of
28        the RDP on the City.

95.     As a proximate result of the City's acts and omissions as alleged herein, the Piero II project and its financing have been delayed and prevented from moving forward and Plaintiff has suffered general, special, consequential, compensatory and/or incidental damages, including, but not limited to: losses due to a reduction in the fair market value of the Property and/or the Piero II project in the tens of millions of dollars; a reduction of tens of millions of dollars in the amount of financing Palmer is able to obtain for the Property and/or the Piero II project due to the change in the credit and real estate markets that occurred during the period of delay caused by the City; the amount of additional interest on existing loans, real estate taxes and other carrying costs paid by Palmer during the period of delay caused by the City, in the millions of dollars; increased future costs of financing, in the tens of millions of dollars, including additional interest and other sums that will have to be paid because, among other things, during the period of delay, the credit and real estate markets have changed and financing cannot now be found on terms as advantageous as they were when Palmer could have moved forward with the Piero II project, but for the acts and omissions of the City; lost opportunity and other costs, in the tens of millions of dollars, due to the fact that Palmer will now have to invest significantly more equity in the Piero II project because, during the period of delay caused by the City, among other things, the credit and real estate markets have changed such that loans for this type of project can only be obtained on significantly lower loan to value or cost ratios, requiring a much larger percentage of equity cushion and a much higher equity investment by Plaintiffs; loss of use; and loss of rental and other revenues and profits, in the tens of millions of dollars, all in an unascertained amount, according to proof.

96.     In additional and/or in the alternative, Plaintiff are entitled to injunctive relief and/or a decree of specific performance, including, but not limited to, the following:

**COMPLAINT**

a.     commanding, ordering, instructing and/or mandating that the City comply with all terms of the Contract described herein;

b.     commanding, instructing and/or mandating that the City recommence and continue in good faith the processing of all applications for building and other permits and clearances for the Piero II project including shoring and excavation permits and foundation only permits, and further ordering the City to process and treat Plaintiffs' applications and requests for approval and permits in the same manner that is at least as favorable and not more onerous than the manner in which other similar projects in the City are processed and treated;

c.     ordering the City to issue all such permits once all applicable requirements have been met; and

d.     injunctive relief proscribing and enjoining the City from continuing to violate Plaintiff's constitutional rights in the manner described herein and/or from taking or causing to be taken any actions which would interfere with Plaintiffs' Permits and Applications for the Piero II project, and from proceeding with and completing said project.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, and each of them or either of them, as appropriate, under applicable law, hereby pray for relief against Defendant, as follows:

**On the First through the Seventh Claims for Relief:**

A.     For declaratory relief whereby, in essence, the Court declares the manner and extent to which Defendant has violated the constitutional rights of the Plaintiffs, or either of them, under the United States Constitution and/or the California Constitution;

B.     That Plaintiffs have and recover their attorney's fees and costs of suit herein, in the manner and to the extent provided for by applicable law, including, but

1   not limited to, pursuant to 42 U.S.C. § 1988(b) and California Code of Civil Procedure

2   §1036;

3   **On the Eighth and Ninth Claims for Relief:**

4        C.      For injunctive relief and/or a decree of specific performance commanding,

5   ordering, instructing and/or mandating that the City comply with all terms of the

6   Contract described herein;

7   **On All Claims for Relief:**

8        D.      As a proximate result of the City's acts and omissions as alleged herein,

9   the Piero II project and its financing have been delayed and prevented from moving

10   forward and Plaintiff has suffered general, special, consequential, compensatory and/or

11   incidental damages, including, but not limited to: losses due to a reduction in the fair

12   market value of the Property and/or the Piero II project in the tens of millions of

13   dollars; a reduction of tens of millions of dollars in the amount of financing Palmer is

14   able to obtain for the Property and/or the Piero II project due to the change in the credit

15   and real estate markets that occurred during the period of delay caused by the City; the

16   amount of additional interest on existing loans, real estate taxes and other carrying

17   costs paid by Palmer during the period of delay caused by the City, in the millions of

18   dollars; increased future costs of financing, in the tens of millions of dollars, including

19   additional interest and other sums that will have to be paid because, among other

20   things, during the period of delay, the credit and real estate markets have changed and

21   financing cannot now be found on terms as advantageous as they were when Palmer

22   could have moved forward with the Piero II project, but for the acts and omissions of

23   the City; lost opportunity and other costs, in the tens of millions of dollars, due to the

24   fact that Palmer will now have to invest significantly more equity in the Piero II project

25   because, during the period of delay caused by the City, among other things, the credit

26   and real estate markets have changed such that loans for this type of project can only

27   be obtained on significantly lower loan to value or cost ratios, requiring a much larger

28   percentage of equity cushion and a much higher equity investment by Plaintiffs; loss

1  of use; and loss of rental and other revenues and profits, in the tens of millions of
2  dollars, all in an unascertained amount, according to proof.

3       E.    For injunctive relief and/or a decree of specific performance, including,
4  but not limited to, the following:

5            1.    commanding, instructing and/or mandating that the City
6  recommence and continue in good faith the processing of all applications for building
7  and other permits and clearances for the Piero II project including shoring and
8  excavation permits and foundation only permits, and further ordering the City to
9  process and treat Plaintiffs' applications and requests for approval and permits in the
10 same manner that is at least as favorable and not more onerous than the manner in
11 which other similar projects in the City are processed and treated;

12           2.    ordering the City to issue all such permits once all applicable
13 requirements have been met; and

14           3.    injunctive relief proscribing and enjoining the City from continuing
15 to violate Plaintiff's constitutional rights in the manner described herein and/or from
16 taking or causing to be taken any actions which would interfere with Plaintiffs' Permits
17 and Applications for the Piero II project, and from proceeding with and completing said
18 project; and

19      F.    That Plaintiffs have and recover such other and further relief as the Court
20 deems just and proper.

21

22 DATED: January 4, 2010          COSTELL & CORNELIUS LAW CORPORATION

23

24                                By: _____
25                                    Jeffrey Lee Costell, Esq.
                                   Attorneys for Plaintiffs Palmer/Sixth Street Properties,
26                                 L.P., a California Limited Partnership, and Geoffrey
                                   Palmer
27

28

F:\wpdocs\GH Palmer\6th Street\Pleadings\complaint federal 1st amended.wpd

47

**COMPLAINT**